UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAL COBURN BROWN and JONATHAN GENTRY,

        Plaintiffs,

        v.

ELDON VAIL, et al.,

        Defendants.

CASE NO. C09-5101-JCC

ORDER

This matter comes before the Court *sua sponte* and relates to Plaintiff Cal Coburn Brown's Motion for a Temporary Restraining Order and Order to Show Cause (Dkt. No. 4) and Defendants' Response thereto (Dkt. No. 10).

**I.     RELEVANT BACKGROUND**

Plaintiff Cal Coburn Brown is a prisoner at the Washington State Penitentiary. In 1993, he was convicted of aggravated first degree murder by a jury in King County Superior Court. Thereafter, he was sentenced to death in early 1994. The death sentence was affirmed in *State v. Brown*, 940 P.2d 546 (Wash. 1997), *cert denied*, 523 U.S. 1007 (1998). Plaintiff then brought a Personal Restraint Petition, which was denied. *In re Pers. Restraint of Brown*, 21 P.3d 687 (Wash. 2001). Plaintiff's federal habeas petition was also denied. *Brown v. Uttecht*, 530 F.3d 1031 (9th Cir. 2008), *cert denied*, *Brown v.*

ORDER – 1

*Sinclair*, 129 S. Ct. 1005 (2009). The Ninth Circuit issued its mandate on January 29, 2009, and the date of Plaintiff's execution was set for March 13, 2009, pursuant to WASH. REV. CODE 10.95.160(2). The Washington Department of Corrections (the "DOC") then announced Plaintiff's execution date.

On October 23, 2008, Defendant Eldon Vail, the Secretary of the DOC, published the revised lethal injection protocol, DOC Policy 490.200, that will govern Plaintiff's execution. (*See* Protocol (Dkt. No. 1-2 at 44–62).) The revised policy, which became effective October 25, 2008, provides, *inter alia*, the method for the administration of three drugs to carry out death by lethal injection. (*See id.* at 8.)

On February 9, 2009, Plaintiff filed, in Thurston County Superior Court, a complaint for injunctive and declaratory relief.[1] (Compl. (Dkt. No. 1-2 at 11–30).) Plaintiff alleges that Washington's lethal injection protocol, as outlined in DOC Policy 490.200, violates Article I, Section 14 of the Washington State Constitution, the Eighth Amendment to the United States Constitution, and due process. (*Id.* ¶¶ 73–84.) In addition, Plaintiff alleges that the DOC lacked legal authority under state law to promulgate the lethal injection protocol, and that the administration of the three drugs, without prescription, violates state and federal controlled substance regulations. (*Id.* ¶¶ 85–96.)

The next day, February 10, 2009, Defendants removed the action to the Eastern District of Washington and the case was assigned to the Honorable Robert H. Whaley. (Show Cause Order (Dkt. No. 1-3 at 90–92).) Judge Whaley found that Defendants had removed the case to the wrong district and remanded the case to the Thurston County Superior Court. (Remand (Dkt. No. 1-3 at 93–94).) In the order to show cause why the action should not be remanded, Judge Whaley noted: "In this case, four of the six asserted bases for relief involve novel and substantial questions of state law. There is pending at this time in Thurston County Superior Court a case raising substantially the same issues (Case No. 08-2-02080-8)." (Show Cause Order 2 (Dkt. No. 1-3 at 92).)

The Thurston County Superior Court case that raises substantially the same issues as Plaintiff's

---

[1] Jonathan Gentry is also a named plaintiff in the Complaint, but he is not presently seeking relief before this Court. (*See* Mot. 2 (Dkt. No. 4) ("Mr. Gentry . . . is not presently seeking a stay").)

ORDER – 2

present action is *Stenson v. Vail, et al.*, Case No. 08-2-02080-8 (the "*Stenson* case"), which involves Darold Stenson's challenge to Washington's lethal injection protocol. (*See* Stenson Am. Compl. (Dkt. No. 6 at 5–27).) Stenson is also a Washington state prisoner under a sentence of death facing the prospect of death by Washington's lethal injection protocol, as outlined in DOC Policy 490.200. (*See id.*) Stenson's amended complaint is nearly identical to Plaintiff's complaint, except that Plaintiff has added the additional allegation that the DOC's administration of the drugs without prescription violates state and federal controlled substance regulations. (*Compare* Stenson Am. Compl. ¶¶ 74–91 (Dkt. No. 6 at 20–25), *with* Compl. ¶¶ 73–96 (Dkt. No. 1-2 at 26–29).)

In the *Stenson* case, the state court granted in part and denied in part the State's motion for summary judgment. (Jan. 26, 2009, Oral Summary Judgment Ruling, pp. 26–29 (Dkt. No. 6-7 at 27–30).) The state court granted summary judgment dismissal on Stenson's claim that the DOC promulgated the lethal injection policy without proper delegation of legislative authority and on the due process claim. (*See id.*) However, the court denied summary judgment on the issue of whether the lethal injection protocol violates Article I, Section 14 of the Washington State Constitution or the Eighth Amendment to the United States Constitution. (*Id.*; *see* Peterson Decl. ¶ 6 (Dkt. No. 6 at 2) (the state court found "among other things that there is a triable issue regarding whether Washington's lethal injection protocol violates Washington Constitution Article I section 14").) Accordingly, Stenson's challenge to Washington's lethal injection protocol was set for trial in May 2009.[2] (Case Scheduling Order (Dkt. No. 6-2 at 2).)

Following Judge Whaley's remand of Plaintiff's case to Thurston County Superior Court, Defendants removed the action to this Court, invoking federal jurisdiction under 28 U.S.C. § 1331. (Removal 1 (Dkt. No. 1).)

---

[2] Stenson currently has a stay of execution in Clallam County Superior Court based on issues unrelated to his lethal injection challenge. (*See* Peterson Decl. ¶ 3 (Dkt. No. 6 at 2).)

ORDER – 3

## II. ANALYSIS

Now before the Court is its *sua sponte* examination of whether abstention is appropriate under *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).[3] In *Pullman*, the Supreme Court established an abstention doctrine designed to further the policy of avoiding unnecessary constitutional decisions. 17A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 122.02[1] (3d ed. 2008); 17A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4242 (3d ed. 2007) ("The Pullman doctrine ultimately rests on the desirability of avoiding unnecessary decision of constitutional issues."). The Supreme Court has explained that "no principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." *Harrison v. NAACP*, 360 U.S. 167, 176 (1959) (*citing Pullman*, 312 U.S. at 501). "This principle does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise; it serves the policy of comity inherent in the doctrine of abstention; and it spares the federal courts of unnecessary constitutional adjudication." *Id.* at 177. Thus, the purposes of *Pullman* abstention are to "avoid both unnecessary adjudication of federal questions and 'needless friction with state policies . . . .'" *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (*quoting Pullman*, 312 U.S. at 500).

In light of these principles, the Ninth Circuit has explained that *Pullman* abstention is warranted where three criteria are satisfied:

(1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.

(2) Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.

(3) The possibly determinative issue of state law is doubtful.

*Smelt v. County of Orange*, 447 F.3d 673, 679 (9th Cir. 2006) (citation omitted).

---

[3] Federal courts may raise the issue of *Pullman* abstention *sua sponte*. *Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d 792, 802 (9th Cir. 2001).

ORDER – 4

In this case, all three criteria are met. First, Plaintiff's Complaint undoubtedly "touches a sensitive area of social policy" concerning Washington's specific protocol for carrying out a death sentence by lethal injection. Plaintiff alleges that "the method of execution currently administered in Washington under the [DOC] Policy, unnecessarily risks the infliction of torturous physical pain and suffering." (Compl. ¶ 4 (Dkt. No. 1-2 at 12).) The death penalty and the method by which a state chooses to execute a death sentence involve sensitive social policy considerations that remain the subject of vigorous debate. *See, e.g.,* Deborah W. Denno, *The Lethal Injection Quandary: How Medicine Has Dismantled the Death Penalty*, 76 FORDHAM L. REV. 49, 59–76 (2007) (discussing society's search for a humane method of execution).

In the *Stenson* case, which raises issues identical to those presented here, the Thurston County Superior Court explicitly acknowledged the sensitive social policy issues surrounding Stenson's challenge to Washington's lethal injection protocol. (*See* Jan. 26, 2009, Oral Summary Judgment Ruling, pp. 26–28 (Dkt. No. 6-7 at 27–29).) In denying the State's motion for summary judgment on the state and federal constitutional issues, the state court explained that a trial was necessary to create a "more complete record" and "help the public in the creation of that record better understand the methods of execution adopted by the State of Washington." (*Id.* at 28.) The court also noted that "cases involving death are different" and observed "the need for the public, as well as the plaintiff, to have a complete understanding as to the methods to be used in this case and an opportunity to examine them in a court of law . . . ." (*Id.* at 26–27.) The sensitive nature of the social policy issues raised by Plaintiff's Complaint is therefore confirmed and heightened by the ongoing proceeding involving identical issues in state court. Moreover, Thurston County Superior Court plainly presents an available and adequate venue for the adjudication of Plaintiff's claims.

The second criterion for abstention is also met because a state court's interpretation of Plaintiff's claims under the Washington constitution and state law "may not only narrow, but even eliminate, any need for federal constitutional adjudication." *See Smelt*, 447 F.3d at 681 (holding *Pullman* abstention

ORDER – 5

warranted where a determination by California courts on the validity of a state law under the California constitution could eliminate the federal constitutional claim); *see also Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d 792, 802 (9th Cir. 2001) (holding *Pullman* abstention warranted where the validity of a city ordinance under the Washington constitution could eliminate the need to determine whether it also violates the federal Constitution). The determination by Washington courts of the validity of Washington's lethal injection protocol under the Washington constitution and state law may obviate any need for federal constitutional adjudication. If the Washington courts ultimately determine that the protocol, as outlined in DOC Policy 490.200, violates the state constitution or state law, then this Court would have no need to determine whether such procedures also violate the federal Constitution.

The third criterion is similarly satisfied because the Court simply "cannot predict with any confidence how [the Washington Supreme Court] would decide" the state constitutional and state law questions presented in the context of this case. *See Smelt*, 447 F.3d at 681 (citation omitted). Plaintiff's challenge to Washington's lethal injection protocol is based on six claims, four of which involve novel issues of state law.[4] (*See* Compl. ¶¶ 73–96 (Dkt. No. 1-2 at 26–29).) Plaintiff's claims are also nearly identical to those that are being litigated in *Stenson*. There, the Thurston County Superior Court has denied the State's motion for summary judgment with respect to Stenson's state and federal constitutional claims. (Jan. 26, 2009, Oral Summary Judgment Ruling, pp. 26–29 (Dkt. No. 6-7 at 27–30).) In so doing, the court necessarily found material issues of fact as to whether the DOC Policy 490.200 violates Article I, Section 14 of the Washington State Constitution. Notably, the Washington Supreme Court has interpreted Article I, Section 14 of the Washington constitution to afford greater protection than its federal counterpart. *State v. Fain*, 617 P.2d 720, 723 (Wash. 1980); *State v. Bartholomew*, 683 P.2d 1079, 1085 (Wash. 1984) ("We have . . . interpreted Const. art. 1, § 14 to

---

[4] Although the Thurston County Superior Court dismissed some of the state law claims on summary judgment in the *Stenson* case, (*see* Jan. 26, 2009, Oral Summary Judgment Ruling, pp. 26–29 (Dkt. No. 6-7 at 27–30)), those state claims have not yet been subjected to state appellate review.

ORDER – 6

provide broader protection than the [U.S.] Supreme Court's interpretation of the Eighth Amendment.").[5] Because Plaintiff's challenge involves a state constitutional provision that is interpreted differently than its federal counterpart, *Pullman* abstention is "particularly appropriate." *See Columbia Basin*, 268 F.3d at 806. The Washington constitutional claim therefore presents an uncertain issue of state law that could be dispositive of the federal constitutional question.[6]

In addition, Plaintiff's Complaint alleges that the DOC lacked proper legislative authority under state law to promulgate the lethal injection protocol, and that the administration of the three drugs, without prescription, violates state and federal controlled substance regulations. (Compl. ¶¶ 85–96 (Dkt. No. 1-2 at 28–29).) Plaintiff asserts that this claim arises from the resignation of Dr. Mark Stern, the former Assistant Secretary of Health Services for the DOC. (*See id.* ¶ 32.) Dr. Stern allegedly recently resigned because of concern over potential involvement of medical personnel in execution procedures and because the DOC apparently obtained the drugs for the planned executions in violation of state and federal laws. (*Id.*) This claim is currently before the Washington Supreme Court in *Brown v. Vail, et al.*, Case No. 82742-7, and the court is apparently scheduled to consider the action and the accompanying motion for a stay on March 5, 2009. (*See* Resp. 3 (Dkt. No. 10).) Thus, this novel claim presents additional unclear issues of state law that could be determinative of the federal claims.

All three of the *Pullman* criteria that warrant abstention are present here. The Court finds that abstention in this case will avoid the "unnecessary interference by the federal courts with proper and validly administered state concerns," *Harrison*, 360 U.S. at 176, and further "the harmonious relationship between state and federal authority," *Pullman*, 312 U.S. at 501. The fact that the Washington Supreme

---

[5] In *Fain,* the court explained, "The historical evidence reveals that the framers of [Washington] Const. art. 1, § 14 were of the view that the word 'cruel' sufficiently expressed their intent, and refused to adopt an amendment inserting the word 'unusual.'" 617 P.2d at 723.

[6] The Washington Supreme Court has rejected a general challenge to lethal injection as a manner of execution, *see In re Pers. Restraint of Pirtle*, 965 P.2d 593, 610 (Wash. 1998), but has yet to address a challenge to the specific lethal injection protocol as implemented in DOC Policy 490.200.

ORDER – 7

Court construes Article 1, Section 14 of the Washington constitution to afford greater protections than its federal counterpart "makes this a particularly good case for *Pullman* abstention." *Smelt*, 447 F.3d at 682 (*citing Columbia Basin*, 268 F.3d at 806). Moreover, this Court "ought not to enter" and interfere in the sensitive area of social policy involving Washington's lethal injection protocol while such issues are currently being litigated in the state courts. *See Pullman*, 312 U.S. at 498. In short, the Court is convinced that considerations of comity, federalism, and constitutional avoidance justify abstention in this case.

When a federal court abstains under *Pullman*, "retention of jurisdiction, and not dismissal of the action, is the proper course." *Columbia Basin*, 268 F.3d at 802 (citation omitted). "*Pullman* abstention requires the district court to retain jurisdiction so that the plaintiff may return to vindicate her federal constitutional rights if the state decision does not settle the issues." *Almodovar v. Reiner*, 832 F.2d 1138, 1141 (9th Cir. 1987). Accordingly, because the Court is abstaining under *Pullman*, it will retain jurisdiction and stay the federal proceeding "until the state courts have finally determined any proceedings filed by the parties" regarding this matter. *Columbia Basin*, 268 F.3d at 807. The Court further advises the parties of their right to preserve any federal claims pursuant to *England v. La. Bd. of Med. Examiners*, 375 U.S. 411 (1964).[7]

## III. CONCLUSION

For the foregoing reasons, all proceedings in this federal action are hereby STAYED until the state courts of Washington have finally determined Plaintiff's challenges to the validity of Washington's lethal injection protocol under state law. This matter is therefore REMANDED to state court. Accordingly, Plaintiff's Motion for a Temporary Restraining Order and Order to Show Cause (Dkt. No. 4) is conditionally DENIED so that Plaintiff can immediately seek relief in state court.

---

[7] *England* allows a party who has been remitted to state court to reserve the right to return to federal court for a ruling on the federal claims. 375 U.S. at 415–16.

ORDER – 8

SO ORDERED this 2nd day of March, 2009.

_John C. Coughenour_
John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 9